UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

**FILED**
DEC 13 2016

CLERK

| | |
|---|---|
| DAKOTA STYLE FOODS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SUNOPTA GRAINS AND FOODS, INC., <br><br> Defendant. | 1:16-CV-01036-CBK <br><br><br> OPINION AND ORDER |

Dakota Style Foods, Inc. ("Dakota Style") initially filed a complaint against SunOpta Grains and Foods, Inc. ("SunOpta") with the Third Judicial Circuit, County of Clark, South Dakota, alleging strict products liability, negligence, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, breach of express warranties, and breach of contract. For relief, Dakota Style is requesting a declaratory judgment, permanent injunction, and monetary damages. On August 12, 2016, SunOpta removed the case to the federal district court under 28 U.S.C. §§ 1332(a)(1) and 1441(a). SunOpta has filed a motion (Doc. 11) for an order dismissing, with prejudice, Dakota Style's strict products liability, negligence, breach of the implied warranty for a particular purpose, breach of express warranty, and breach of contract claims. Furthermore, SunOpta moves the Court to deny Dakota Style's request for declaratory judgment and permanent injunction.

## FACTS

This case arises from a recall of sunflower products that were allegedly exposed to Listeria monocytogenes ("Listeria"). Listeria is an organism that can cause serious and sometimes fatal infections in young children, elderly adults, and individuals with weakened

immune systems. Pregnant women exposed to Listeria also have an increased risk of having a miscarriage or stillbirth. Healthy individuals may suffer short-term symptoms such as high fever, severe headache, stiffness, nausea, diarrhea, and abdominal pain.

The plaintiff, Dakota Style, is a South Dakota corporation in the business of packaging and distributing snack foods. The defendant, SunOpta, is a Minnesota corporation in the business of processing and supplying organic and non-GMO food products.

On March 26, 2014, Dakota Style entered into a contract with SunOpta for the purchase of Dakota Style's sunflower kernel requirements, up to 2,500,000 pounds, for delivery by SunOpta to Dakota Style between November 1, 2014, and October 31, 2015. On April 23, 2015, Dakota Style and SunOpta agreed to a second "requirements contract" for up to 2,500,000 pounds of sunflower kernels to be delivered by SunOpta to Dakota Style between November 1, 2015, and October 31, 2016. That same day, Dakota Style and SunOpta entered into a separate contract for the purchase of Dakota Style's sunflower in-shell requirements for up to 2,000,000 pounds to be delivered by SunOpta to Dakota Style between November 1, 2015, and October 31, 2016.

On May 2, 2016, SunOpta notified Dakota Style that it was voluntarily recalling some of its sunflower products due to the potential presence of Listeria. SunOpta advised that the affected products were processed at its facility between February 1, 2016, and February 19, 2016. SunOpta informed Dakota Style that it delivered approximately 88,000 pounds of sunflower kernels that were subject to the recall between February 8, 2016, and March 14, 2016. On May 18, 2016, SunOpta reported to Dakota Style that it was expanding its recall of roasted sunflower kernels that were processed between February 20, 2016, and April 20, 2016. Finally, on May 31, 2016, SunOpta notified Dakota Style that it would be further expanding its recall to

all sunflower products that were processed between May 31, 2015, and January 31, 2016, at SunOpta's facility in Crookston, Minnesota. For each recall, SunOpta instructed Dakota Style to "immediately examine your inventory and quarantine any product subject to this recall." Compl. ¶ 14. SunOpta further advised that Dakota Style could "either destroy the affected product or return the recalled product." Id.

## ANALYSIS

### 1. Standard of Review

"In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark., 758 F.3d 1038, 1042 (8th Cir. 2014) (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012). "[A]lthough a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" Id.

## 2. South Dakota Law Governs Substantive Issues

Subject matter jurisdiction is established by diversity of citizenship in this case. "It is, of course, well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state." Jacobs ex rel. Estate of Jacobs v. Evangelical Lutheran Good Samaritan Soc., 849 F. Supp. 2d 893, 896–97 (D.S.D. 2012) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). "In a choice-of-law analysis for a diversity action brought in federal district court, the choice-of-law rules are substantive for *Erie* purposes, and the choice-of-law rules of the forum state are applied to determine the litigating parties' rights." Id. The forum state is "the state in which a lawsuit is filed." FORUM STATE, Black's Law Dictionary (10th ed. 2014). Dakota Style initially filed its claim with the Third Judicial Circuit of South Dakota. SDCL § 53-1-4 states: "A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." The complaint asserts "SunOpta contracted with Dakota Style for the sale of in-shell sunflower seeds and sunflower kernels, and prepared said products for delivery to Dakota Style's packaging facility in Clark County, South Dakota." Compl. ¶ 4. The place of performance for each sales contract was at Dakota Style's packaging facility in South Dakota. Therefore, South Dakota law governs the substantive issues in this case.

## 3. UCC Governs the Sales Contracts between Dakota Style and SunOpta

The first question before the Court is whether the transactions between Dakota Style and SunOpta fall within the scope of the Uniform Commercial Code ("UCC"). "In order for the UCC to govern the transaction, the sale must be for the sale of goods." City of Lennox v. Mitek Indus., Inc., 519 N.W.2d 330, 332 (S.D. 1994). SDCL § 57A-2-106(1) states:

4

> In this chapter unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (§ 57A-2-401). A "present sale" means a sale which is accomplished by the making of the contract.

The definition of "goods" includes "growing crops." SDCL § 57A-2-105. Dakota Style and SunOpta entered into several "contracts for sale" for the purpose of selling a bulk amount of sunflower products at a future date. Therefore, the transactions in question are governed by the UCC.

### 4. Strict Products Liability and Negligence

The issue is whether Dakota Style's strict products liability and negligence claims should be dismissed because they are barred by South Dakota's economic loss doctrine. "The general rule is that economic losses are not recoverable under tort theories; rather, they are limited to the commercial theories found in the UCC." City of Lennox v. Mitek Indus., Inc., 519 N.W.2d 330, 333 (S.D. 1994) (*citing* Agristor Leasing v. Spindler, 656 F.Supp. 653 (D.S.D. 1987)). The rationale behind the economic loss doctrine is explained in *Hapka v. Panquin Farms*, 458 N.W.2d 683, 688 (Minn. 1990), where the court stated:

> [T]he Code not merely permits but also encourages negotiated agreements concerning all aspects of a commercial transaction including warranties, warranty disclaimers, and liability limitations. The foundational assumption of the Code as a whole is that by importing to their negotiations their experience in the marketplace, the reasonable contemplation of sophisticated parties is embodied in the transaction. It is at the time of the contract formation that experienced parties define the product, identify the risks, and negotiate a price of the goods that reflects the relative benefits and risks to each.

South Dakota is "in agreement with the rationale behind the rule denying economic damages under tort theories and expressly recognizes it." City of Lennox, 519 N.W.2d at 333.

5

Dakota Style argues there are three exceptions to the economic loss doctrine. The Court rejects this argument. South Dakota recognizes only two exceptions to the general rule: (1) when there is damage to "other property;" and (2) when there is personal injury. Id. The distinction between economic loss and loss to "other property" was clarified by the court in *Agristor* when it stated:

> Economic loss, on the other hand, is more specific. It is defined as that loss resulting from the failure of the product to perform to the level expected by the buyer and the consequential losses resulting from the buyer's inability to make use of the effective product, such as lost profits.

Agristor Leasing v. Spindler, 656 F.Supp. 653, 657 (D.S.D. 1987). "Examples of 'other property' include: (1) defective heater that exploded and destroyed a major portion of a refiner; and (2) defective brakes that hypothetically caused a truck to run into a home." City of Lennox, 519 N.W.2d at 333.

In the complaint, Dakota Style contends it "has suffered monetary damages as a direct, proximate and legal result and consequence of the Defendant's acts and omissions, negligence, breach of contract, and strict liability for its defective Products, in such amounts as may be shown by the evidence." Compl. ¶ 51. Dakota Style, in its brief in opposition, attempts to amend its complaint by offering new facts that it incurred additional "other property" damages and personal injury damages. While the plaintiff is correct that it may clarify its factual allegation to conform with the requirements of a valid legal cause of action, it "may not amend its Complaint through an argument raised in the brief in opposition to a motion to dismiss." Midland Farms, LLC v. U.S. Dept. of Agric., 35 F.Supp.3d 1056, 1066 (D.S.D. 2014). The complaint fails to mention damages to "other property" or personal injury damages, leaving only economic damages to be granted as a form of relief. "The prohibition against tort actions to

6

recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." Id. "The economic loss doctrine, therefore, sets forth that regardless of whether a tort duty may exist between contracting parties, the actual duty one party owes to another for purely economic loss should be based exclusively on the contract to which they agreed and assigned their various risks." Id. Because South Dakota has adopted the economic loss doctrine, Dakota Style has failed to "state a claim to relief that is plausible on its face." Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark., 758 F.3d 1038, 1042 (8th Cir. 2014) (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Therefore, SunOpta's motion to dismiss Dakota Style's claims of strict liability and negligence should be granted.

5. **Breach of the Implied Warranty of Fitness for a Particular Purpose**

The issue is whether Dakota Style failed to plead a sufficient factual basis to support its breach of the implied warranty of fitness for a particular purpose claim. A breach of the implied warranty of fitness for a particular purpose claim has three elements:

> (1) Seller must have reason to know the buyer's particular purpose;
> (2) Seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods; and
> (3) Buyer must, in fact, rely upon the seller's skill or judgment.

Diamond Surface, Inc. v. State Cement Plant Com'n, 583 N.W.2d 155, 162 (S.D. 1998) (*citing* SDCL § 57A-2-315). "Whether or not this warranty arises in any individual case is basically a question of fact to be determined by the circumstances of the contracting." SDCL § 57A-2-315 cmt. 1. "Under this section the buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and

7

judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists." Id. "The buyer, of course, must actually be relying on the seller." Id. "When an implied warranty of fitness for purpose is created, the seller must deliver a product that is fit for the purpose for which it is intended." Nationwide Mut. Ins. Co. v. Barton Solvents Inc., 855 N.W.2d 145, 154 (S.D. 2014).

SunOpta argues that Dakota Style failed to identify the particular purpose of the sunflower products, as well as plead whether SunOpta was aware of such purpose. Dakota Style alleges in the complaint that SunOpta failed to deliver sunflower products that were "fit for human consumption." Compl. ¶ 29. The Court finds the plaintiff more than adequately explained the particular purpose of the sunflower products. Furthermore, Dakota Style asserts it "is a packager and distributor of the Product, facts which are well known to the Defendant." Compl. ¶ 28. When considering the nature of the business relationship between the two parties, it is reasonable to infer SunOpta was fully aware of how Dakota Style specifically used its sunflower products when viewing the facts in the most favorable light to the plaintiff. While SunOpta points out a "particular purpose" differs from the ordinary purpose for which the goods are used, Dakota Style explicitly alleges that SunOpta was particularly aware of how Dakota Style utilized the sunflower products. Dakota Style has identified a particular purpose for the sunflower products, and has pleaded a sufficient factual basis to make a reasonable inference that SunOpta had reason to know Dakota Style's particular purpose for the sunflower products. Therefore, Dakota Style's complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark., 758 F.3d 1038, 1042 (8th Cir. 2014) (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). SunOpta's motion to dismiss Dakota Style's implied warranty of fitness for a

particular purpose claim should be denied. It would seem to be elementary that food products should not be supplied which will poison consumers.

## 6. Breach of Express Warranty

The next issue is whether Dakota Style's express warranty claim should be dismissed because it failed to plead the content or source of the alleged product specifications that SunOpta allegedly breached. SunOpta argues: (1) Dakota Style's express warranty claim fails because the contracts for sunflower products do not contain product specifications, as alleged in the complaint; and (2) Dakota Style failed to identify or describe what specifications were actually breached, if any. Dakota Style argues that Rule 12(b)(6) provides procedural protections to the plaintiff which "alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action." Neitzke v. Williams, 490 U.S. 319, 329-30 (1989).

Dakota Style has provided a sufficient factual basis to support a claim of breach of express warranty. SDCL § 57A-2-213 provides:

> (1) Express warranties by the seller are created as follows:
>
>   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
>   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
>   (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

9

>  (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

The complaint alleges, "[t]he Product containing listeria [sic], or risk of listeria [sic], fails to meet the written product specifications, which constitutes a breach of the Defendant's express warranties to Plaintiff." Compl. ¶ 38. In Dakota Style's brief in opposition, it filed the affidavit of Kevin Dandurand, attached with the product specifications that were incorporated into each of the sales contracts. Each sales contract between Dakota Style and SunOpta explicitly states: "As per attached product specifications." "Purchase agreements may incorporate by reference another document containing technical specifications for the product, and this will likely create an express warranty by description." James River Equip. Co. v. Beadle Cty. Equip., Inc., 646 N.W.2d 265, 269 (S.D. 2002) (citing 67 AmJur2d Sales § 739 (1985)). The product specifications requires that the sunflower kernels "be manufactured in accordance with Good Manufacturing Practice 21 CFR, Part #110," and "conform in every respect with the provisions of the Federal Food, Drug, and Cosmetic Act, as amended, and to all applicable State and Local regulations." Doc. 17-1. Because the complaint attached a sales contract, marked as Exhibit A, with several product specifications incorporated by reference, Dakota Style is able to clarify to SunOpta exactly which express warranties were allegedly breached. Therefore, Dakota Style has provided a sufficient factual basis to support its claim of breach of express warranty. SunOpta's motion to dismiss Dakota Style's breach of express warranty claim should be denied.

7. **Breach of Contract**

The next issue is whether Dakota Style's breach of contract claim should be dismissed because SunOpta has fulfilled its obligations under SDCL § 57A-2-301, and because Dakota

Style failed to identify which contract term, if any, was breached by SunOpta. "The elements of a breach of contract claim are: (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." Bowes Constr., Inc. v. S. Dakota Dep't of Transp., 793 N.W.2d 36, 43 (S.D. 2010). Dakota Style alleges in its complaint that SunOpta's "obligation generally is to transfer and deliver the Product in accordance with the contract." Compl. ¶ 41. Accordingly, Dakota Style alleges SunOpta breached its promise of delivering sunflower products in accordance with the contract by delivering product that was "tainted with listeria [sic]." Compl. ¶ 42. The sales contract requires each product be delivered "[a]s per attached product specifications." Ex. A. As stated above, the product specifications required, among other things, to deliver a product in accordance with the Food, Drug, and Cosmetic Act. When viewing the facts in the most favorable light to the plaintiff, Dakota Style has provided a sufficient factual basis to "state a claim to relief that is plausible on its face." Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark., 758 F.3d 1038, 1042 (8th Cir. 2014) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Therefore, SunOpta's motion to dismiss Dakota Style's breach of contract claim should be denied.

## 8. Declaratory Judgment

The next issue is whether Dakota Style's request for declaratory relief should be dismissed as a matter of law. "The operation of the Declaratory Judgment Act is procedural only." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (quoting Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937)). The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." U.S. Water Servs., Inc. v. ChemTreat, Inc.,

794 F.3d 966, 971 (8th Cir. 2015) (*citing* U.S.C. § 2201(a)). "The phrase 'case in controversy' in § 2001 'refers to the type of Cases and Controversies that are justiciable under Article III.' " Id. (*quoting* MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)). Because the Declaratory Judgment Act is procedural only, it does not provide a substantive cause of action, but instead relies on the requirement and restrictions of the underlying substantive cause of action. *See* Quest Aviation, Inc. v. NationAir Ins. Agencies, Inc., No. 1:14-CV-01025-RAL, 2005 WL 1622031, at *3. Dakota Style is seeking a declaration "that no money is owed to the Defendant as a result of Defendant's conduct described above, and that Plaintiff is entitled to money damages." Compl. ¶ 47. SunOpta argues that Dakota Style failed to identify the underlying cause of action it was relying upon for its request for declaratory judgment and all damages, if any, have already accrued.

   Dakota Style has failed to identify the underlying cause of action it was relying upon for its request for declaratory judgment. Fed. R. Civ. P. (8)(a)(2) explains the purpose of filing a complaint is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Dakota Style did not give adequate notice to SunOpta in this regard. Dakota Style should have expressly stated which underlying causes of action it is relying upon for its request for a declaratory judgment. Therefore, Dakota Style has failed to "state a claim for relief that is plausible on its face." Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark., 758 F.3d 1038, 1042 (8th Cir. 2014) (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S., at 570 (2007)). Because such relief cannot be granted without an identified underlying cause of action, SunOpta's motion to dismiss should be granted.

## 9. Permanent Injunction

Lastly, the issue is whether SunOpta is entitled to a motion to dismiss on Dakota Style's request for a permanent injunction. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). "A plaintiff must demonstrate:

> (1) That it has suffered an irreparable injury;
> (2) That remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) That, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) That the public interest would not be disserved by a permanent injunction.

Id. (*citing* Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987)). SunOpta argues that Dakota Style's request for a permanent injunction fails because Dakota Style does not identify facts supporting its allegation of irreparable harm, nor is it ripe for consideration. "The ripeness inquiry requires examination of both the 'fitness of the issues for judicial decision' and 'the hardship to the parties withholding court consideration.' " Parrish v. Dayton, 761 F.3d 873, 875 (8th Cir. 2014) (*quoting* Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)). "The touchstone of a ripeness inquiry is whether the harm asserted has 'matured enough to warrant judicial intervention.' " Id. (*quoting* Paraquad, Inc. v. St. Louis Hous. Auth., 259 F.3d 956, 958 (8th Cir. 2001)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " Id. (*quoting* Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985)). "The plaintiffs need not await the consummation of threatened injury to obtain preventive relief." Id. (*quoting* Pennsylvania v. West Virginia, 262 U.S. 553, 593 (1923)). "If the injury is certainly impending, that is enough."

Id. Dakota Style has failed to plead any facts indicating that injury is "certainly impending." Instead, the pleaded facts indicate the injury has already occurred. Therefore, the Court finds Dakota Style's request for a permanent injunction failed to provide sufficient facts to indicate a permanent injunction is ripe for consideration. There is nothing to enjoin. SunOpta's motion to dismiss Dakota Style's request for a permanent injunction should be granted.

## ORDER

Now, therefore,

IT IS ORDERED:

1. Defendant's motion, Doc.11, requesting oral argument on its partial motion to dismiss, pursuant to Local Rule 7.1(c), is denied.

2. Defendant's motion, Doc. 11, to dismiss plaintiff's claims of strict products liability, negligence, declaratory judgment, and permanent injunction is granted without prejudice.

3. Defendant's motion, Doc. 11, to dismiss plaintiff's claims of breach of the implied warranty for a particular purpose, breach of express warranty, and breach of contract is denied.

DATED this 13th day of December, 2016.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge